UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Tomas C. Johnson

v.

Civil No. 25-cv-013-LM-TSM
Opinion No. 2026 DNH 159 P

Strafford County Department of Corrections et al

**O R D E R**

Self-represented plaintiff Tomas C. Johnson brings this action arising under 42 U.S.C. § 1983 alleging violations of his constitutional rights and supplemental state-law tort claims while he was held pretrial at the Strafford County Department of Corrections (SCDOC). After preliminary review of his original complaint pursuant to 28 U.S.C. § 1915A, the court ordered service of a procedural due process claim regarding a prison disciplinary proceeding against defendant Christopher Brackett (the SCDOC Superintendent), as well as a "Jane Doe" defendant who was later identified as SCDOC Captain Gwen Weisgarber. Doc. no. 11 at 10-11; see also doc. nos. 13 & 14. The court dismissed without prejudice the remainder of the claims set forth in the original complaint, but granted plaintiff leave to move to amend. The plaintiff's subsequent motion for leave to amend (doc. no. 17) is presently before the court for preliminary review. For the following reasons, plaintiff's motion is granted in part and denied in part.

## STANDARD OF REVIEW

When conducting preliminary review under 28 U.S.C. § 1915A, the court assumes the truth of the facts set forth in the complaint, construes reasonable inferences in the plaintiff's favor, and considers whether the plaintiff has stated a plausible claim to relief. Hernandez-Cuevas v. Taylor, 723 F.3d 91, 102-03 (1st Cir. 2013). Because the plaintiff is self-represented, the court construes his complaint liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam). The court may dismiss claims at the preliminary review stage if the court lacks subject matter jurisdiction, a defendant is immune from the relief sought, the assertions in the complaint fail to state a claim upon which relief may be granted, or the claims are frivolous or brought in bad faith. 28 U.S.C. § 1915A(b).

## BACKGROUND[1]

In 2023, plaintiff was held pretrial at SCDOC on federal charges. In January of that year, Dr. Christopher Braga (a doctor employed at SCDOC) diagnosed plaintiff with type 2 diabetes and prescribed him metformin, which he would take once daily. On March 23, 2023, Nurse Rebecca gave plaintiff what he alleges was incorrect medication. Shortly after taking the medication, plaintiff began suffering acute abdominal pain, a severe headache, and had difficulty breathing. He attempted to get officers' help but fell unconscious before he could do so, striking his

[1] The following facts are drawn from plaintiff's proposed amended complaint (doc. no. 17, Ex. A) and his filing docketed by this court on March 17, 2025 (doc. no. 6), which the court construes as an exhibit to the proposed amended complaint. Throughout the proposed amended complaint, plaintiff identifies certain individuals by their first name and title only. The court follows suit.

head and back as he fell. When plaintiff came to, he was surrounded by several SCDOC officers and nurses, who were asking him to get up. Plaintiff explained he was in pain and could not move. The officers and nurses "forcibly pulled" plaintiff up and "forced" him into a wheelchair, which caused plaintiff pain and aggravated his injuries from the fall. Emergency medical personnel transported plaintiff to the hospital.

At the hospital, plaintiff stated that his collapse was caused by the incorrect medication Nurse Rebecca administered to him. However, the proposed amended complaint contains no allegations regarding what hospital staff determined the cause of his collapse to be or what hospital staff informed him. According to a patient note in the complaint exhibit (doc. no. 6), the only diagnosis plaintiff received at the hospital was "acute bilateral lower back pain," and x-rays of his chest and spine were "non-remarkable" and within normal limits. Doc. no. 6 at 20. He was given ibuprofen.

On April 17, 2023, Nurse Jess gave plaintiff incorrect medication. When plaintiff asked Nurse Jess if she had given him the right medication, she assured him she did. However, shortly after taking the medication, plaintiff had a seizure and soiled his pants. Nurse Jess's supervisor confirmed that plaintiff had been given the wrong pills but assured him he had only received blood pressure medication and there was no need to go to the hospital. The supervisor told plaintiff his condition would be closely monitored.

Beginning in at least April of 2023, plaintiff's housing unit and cell experienced recurring flooding. Plaintiff reported the flooding to SCDOC staff, who failed to remedy the situation. In May or June, plaintiff slipped on a puddle and injured his knee. He was sent to the hospital, where staff told him his injury required surgery. The surgery was scheduled for the next day, and plaintiff was returned to SCDOC for the night. He was placed in a one-man cell. In light of plaintiff's injury, he required assistance to use the bathroom. He fell when he tried to use the bathroom alone, which caused additional knee pain. Plaintiff pressed the call button in his cell but no one responded, so he had to force himself into a wheelchair to get back in bed. Plaintiff filed a grievance regarding the lack of assistance.

After the surgery, plaintiff was housed in SCDOC's medical unit for two weeks and was not allowed outside. Plaintiff asked for a shower chair because it was hard to stand in the shower on his own, but plaintiff's request was denied. Plaintiff fell when he tried to shower.

Plaintiff subsequently spoke with SCDOC Superintendent Christopher Brackett regarding grievances plaintiff filed. Superintendent Brackett is alleged to have said "so you think you're going to sue my officers and employees and try to win you'll see." Doc. no. 17 at 9. Days later, all of plaintiff's personal property was missing from his cell. Plaintiff filed a grievance regarding his missing property.

On July 7, 2023, plaintiff once again slipped on a puddle of water in his housing unit, which reinjured his knee. Other inmates helped plaintiff to his cell

because he was unable to walk. Plaintiff was brought to the hospital. The result of this hospital trip is unclear.

At some point, plaintiff had a job at SCDOC. According to plaintiff, he was told that, if he had sufficiently recovered from his knee surgery to return to work, he no longer needed to sleep on a bottom bunk. Conversely, if he still needed a bottom bunk, then his knee was not healthy enough to work. Plaintiff submitted a request asking that this communication be put in writing. Plaintiff states he was fired shortly after making that request. He claims that he asked for his job back several times but was told that he had to stop filing grievances.

In November 2023, plaintiff was placed in segregation and served with disciplinary charges for assaulting another inmate. At the disciplinary hearing, plaintiff requested that Captain Weisgarber call the cellmate of the alleged victim, who witnessed what had happened. Captain Weisgarber refused to call the witness, found plaintiff guilty, and sentenced the plaintiff to twenty-five days. Superintendent Brackett denied plaintiff's appeal.

With one exception, the factual allegations of the original complaint are materially identical to the proposed amended complaint's factual allegations as set forth above.[2] See doc. no. 11 at 2-5. The proposed amended complaint purports to bring the following claims:

- Count I: A deliberate indifference claim against Dr. Braga, Superintendent Brackett, Nurses Jess and Tracy,

---

[2] The only material additional allegations in the proposed amended complaint are the allegations pertaining to plaintiff's firing. The original complaint contained no allegations regarding plaintiff's job or his firing.

the United States Marshals Service (USMS), and John and Jane Does. Plaintiff alleges that these defendants were deliberately indifferent to his serious medical needs by administering wrong medication and withholding a post-surgery shower chair.

- Count II: An excessive force claim against USMS, "John Does 1-4," and "Jane Does 1-3." Doc. no. 17 at 12. Plaintiff alleges that these defendants subjected plaintiff to objectively unreasonable force when they put him in a wheelchair immediately after his collapse in March of 2023.

- Count III: A retaliation claim against "Unit Officers John and Jane Does," Captain Weisgarber, USMS, "and involved staff." Id. Plaintiff alleges that these defendants fired and/or disciplined him for filing grievances and preparing civil rights litigation in violation of Plaintiff's First Amendment rights.

- Count IV: A "pretextual discipline" due process claim against Captain Weisgarber, Superintendent Brackett, Strafford County, and USMS. Id. Plaintiff alleges that these defendants caused him to be "subjected to punitive segregation based on fabricated disciplinary infractions without due process." Id.

- Count V: A conditions-of-confinement claim against USMS, Superintendent Brackett, "John and Jane Does 1-100," and the County. Id. at 13. Plaintiff alleges that these defendants violated his due process rights and state tort law by failing to remedy the flooding in his unit.

- Count VI: "Supplemental state law claims—negligence, medical malpractice, and battery." Id. Plaintiff purports to bring Count VI "against all relevant individual defendant[s]" but does not specify who those defendants are. Id. Nor does he specify the factual allegations that he contends give rise to these claims.

## DISCUSSION

As an initial matter, the court finds that plaintiff's federal claims against the County are defective for the same reasons stated in the original preliminary-review

order. See doc. no. 11 at 6-7 (discussing Monell liability). In addition, none of the federal claims asserted against USMS are plausible because § 1983 does not provide a cause of action against entities acting under color of federal law, Chatman v. Hernandez, 805 F.2d 453, 455 (1st Cir. 1986) (per curiam), and Bivens actions cannot be brought against federal agencies, FDIC v. Meyer, 510 U.S. 471, 484-86 (1994). In addition, the complaint contains no factual allegations pertaining to USMS or individual marshals, and "vicarious liability is inapplicable to Bivens and § 1983 suits." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

The court will assess the plausibility of the claims alleged against the remaining defendants in the proposed amended complaint count-by-count.

## I. Count I: Deliberate Indifference

Deliberate indifference claims have both an objective and subjective component. Leite v. Bergeron, 911 F.3d 47, 52 (1st Cir. 2018). "First, the deprivation of care alleged must be, objectively, sufficiently serious." Id. (brackets and quotation omitted). "For claims based on inadequate medical care, a medical need is 'serious' if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. (brackets and quotation omitted).

"Second, a prison official must have a sufficiently culpable state of mind such that the official shows deliberate indifference to inmate health or safety." Id. (quotation omitted). This standard is met when the prison official "knows of and disregards an excessive risk to inmate health or safety." Id. (quotation omitted). A

good-faith mistake is insufficient, as is a showing of mere negligence. Id. at 52-53. Rather, the plaintiff must show "obduracy and wantonness": that the official "had actual knowledge of impending harm, easily preventable, and yet failed to take the steps that would have easily prevented that harm." Id. (quotations omitted).

Judged against this standard, the proposed amended complaint does not allege a plausible deliberate indifference claim. With respect to plaintiff's allegation that he received incorrect medication on two occasions, his factual assertions do not make plausible the inference that Dr. Braga or Superintendent Brackett had any involvement in his receipt of incorrect medication, let alone that they engaged in obdurate or wanton conduct. Nor has plaintiff plausibly alleged a sufficiently culpable state of mind on behalf of the individually named nurses whom plaintiff claims administered the medication. At most, plaintiff's allegations allow the court to infer that the nurses were negligent or careless, which is far from the required showing.

With respect to the shower chair, plaintiff does not allege that a doctor prescribed him a shower chair and his factual allegations do not permit the inference that his need for shower chair was so obvious that even a layperson could have recognized its necessity. But even if he had, plaintiff does not make clear to whom he requested a shower chair or who denied his request. As such, he has not shown he is entitled to relief.

II. Count II: Excessive Force

To assess a 42 U.S.C. § 1983 excessive force claim, courts begin the analysis "by identifying the specific constitutional right allegedly infringed by the challenged application of force. . . . The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right, rather than to some generalized 'excessive force' standard." Graham v. Connor, 490 U.S. 386, 394 (1989). In Count II of the proposed amended complaint, plaintiff purports to bring an excessive force claim under the Fourteenth Amendment.

The Supreme Court has held that "the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." Kingsley v. Hendrickson, 576 U.S. 389, 397 (2015) (quotation omitted); see also Graham, 490 U.S. at 395 n.10 (declining to resolve "whether the Fourth Amendment continues to provide individuals with protection against the deliberate use of excessive physical force beyond the point at which arrest ends and pretrial detention begins"). To prevail on an excessive force claim under the Fourteenth Amendment, the plaintiff must show "that the force purposely or knowingly used against him was objectively unreasonable." Kingsley, 576 U.S. at 397. The use of force against a pretrial detainee is objectively unreasonable if it "is not rationally related to a legitimate governmental objective or . . . is excessive in relation to that purpose." Id. at 398. This standard cannot be applied mechanically and instead "turns on the facts and circumstances of each particular case." Id. at 397 (quotation omitted). Moreover, because the complexity of operating a prison requires corrections officials to have "substantial discretion" when making "split-second judgments . . . in circumstances

that are tense, uncertain, and rapidly evolving," a court must evaluate the objective reasonableness of the force used "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." Id. at 397, 399 (quotations omitted).

Plaintiff claims that several John and Jane Doe defendants ran afoul of this standard when they forced him into a wheelchair after his first collapse in March of 2023. The plaintiff's factual allegations regarding this alleged conduct are sparse. The totality of his allegations is that "defendants Officer John Doe and Nurses Jane Does forcibly pulled Plaintiff from the floor and forced him into a wheelchair disregarding head and spinal trauma and inflicting extreme pain and aggravation of injury." Doc. no. 17 at 6. The seriousness of a plaintiff's injuries is a relevant consideration in determining whether the use of force against a pretrial detainee was objectively unreasonable. Kinglsey, 576 U.S. at 397. However, the medical records appended to the proposed amended complaint refute the notion that plaintiff suffered a severe injury as a result of this incident. See Yacubian v. United States, 750 F.3d 100, 108 (1st Cir. 2014) ("[I]t is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." (alteration and quotation omitted)). Plaintiff was diagnosed only with lower back pain and his x-rays were unremarkable. Doc. no. 6 at 20.

What is more, accepting plaintiff's factual allegations as true, it is implausible to infer that the force allegedly used was unreasonable from the

perspective of an officer on the scene making split-second judgments. Plaintiff alleges that he fell unconscious and collapsed to the floor, striking his head and back as he did so. The officers put plaintiff in a wheelchair, and he was thereafter treated by emergency medical personnel and brought to the hospital. Given the rapidly evolving situation alleged by the plaintiff, it cannot be plausibly inferred that the degree of force used was objectively unreasonable from the perspective of the responding officers. In short, the complaint's factual allegations do not allow the court to reasonably infer that lifting plaintiff from the ground and placing him in a wheelchair so that he could be seen by medical personnel was unrelated to a legitimate government interest or excessive in relation to that interest. Kingsley, 576 U.S. at 398.

## III. Count III: Retaliation

"To prevail on a claim of retaliation for exercise of First Amendment rights under § 1983, a prisoner must demonstrate that (1) he engaged in protected conduct; (2) he suffered an adverse action; and (3) his constitutionally protected conduct was a substantial or motivating factor in the adverse action." Cook v. Maloney, Civ. No. 03-12138-RWZ, 2010 WL 1381859, at *2 (D. Mass. Mar. 30, 2010). Plaintiff contends that he was subjected to unlawful retaliation in two respects. First, he alleges that unnamed unit officers or other "involved staff" terminated his employment in retaliation for filing administrative grievances regarding his medical treatment at SCDOC. Doc. no. 17 at 12. Second, he alleges that these same defendants, as well as Captain Weisgarber (who conducted

plaintiff's disciplinary hearing), "manufactur[ed] false assault charges and [threw] him into segregation" to punish him for filing grievances. Id.

Plaintiff's first theory of retaliation survives preliminary review. A prisoner's utilization of available administrative grievance procedures comes within the First Amendment's guarantee of the right to petition government for redress of grievances. Graham v. Henderson, 89 F.3d 75, 80 (2d Cir. 1996). In addition, "[t]ermination of a prisoner's employment . . . constitutes an adverse action for purposes of claims of retaliation." Cossette v. Poulin, Civ. No. 06-cv-347-JD, 2006 WL 3751206, at *5 (D.N.H. Dec. 18, 2006). Finally, because retaliatory intent generally must be proven by circumstantial evidence, at the preliminary review stage a court can plausibly infer a culpable state of mind from a "chronology of events." McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979). Here, plaintiff alleges that he was told that his grievances were the basis for his termination and that, if he wanted his job back, he needed to stop filing grievances.

While the court finds that this retaliation claim is plausibly alleged at the preliminary review stage, the court declines to direct service of this claim at this time. Plaintiff purports to bring this retaliation claim against unnamed John and Jane Doe defendants who were assigned to plaintiff's housing unit, as well as unnamed "involved staff." Doc. no. 17 at 12. "A plaintiff is required to specifically identify each defendant against whom relief is sought." LeBaron v. Hicks, C.A. No. 09-11904-NMG, 2010 WL 11937157, at *3 (D. Mass. Apr. 7, 2010) (citing Fed. R. Civ. P. 10(a)); see also Fed. R. Civ. P. 8(a). For plaintiff to maintain this retaliation

claim, he will need to ascertain the defendants' identity through discovery. Once plaintiff obtains the identities of the Doe defendants, he should move for leave to substitute the named defendants for those Doe defendants. See Roberts v. Newsom, No. 1:21-cv-00506-KES-CDB (PC), 2024 WL 5247105, at *2 (E.D. Cal. Dec. 30, 2024). He should also submit a motion for issuance of summonses as to those defendants.

Because plaintiff's employment-related allegations (i.e. termination from job) sufficiently allege a retaliation claim under a cognizable legal theory, the court need not determine whether his discipline-related allegations (i.e., false charges and placement in segregation) state a cognizable theory of liability against the defendants whom plaintiff seeks to hold responsible for his allegedly retaliatory termination.[3] A plaintiff need not identify more than one plausible theory of liability in order to avoid dismissal for failure to state a claim upon which relief can be granted. Cf. Caltex Plastics, Inc. v. Lockheed Martin Corp., 824 F.3d 1156, 1159 (9th Cir. 2016) (explaining that a claim should be dismissed under Rule 12(b)(6) only when it is unsupported by any cognizable theory of liability).

---

[3] The court does not understand the proposed amended complaint to seek to hold Captain Weisgarber liable for plaintiff's termination. To the extent the proposed amended complaint alleges that Captain Weisgarber retaliated against plaintiff by manufacturing false disciplinary charges (or to the extent plaintiff intended to assert that Captain Weisgarber was somehow involved in plaintiff's termination), the court finds that plaintiff's factual allegations are conclusory and insufficient to justify service of any retaliation claim upon Captain Weisgarber.

## IV. Count IV: Due Process

The claim alleged in Count IV is "Fourteenth Amendment—Due Process Violation/Pretextual Discipline." Doc. no. 17 at 12. The court previously found that the original complaint stated a procedural due process claim related to the procedures utilized at plaintiff's disciplinary hearing that was sufficient to survive preliminary review. See doc. no. 11 at 10-11. The court construes Count IV as alleging (1) the same procedural due process claim identified in doc. no. 11, as well as (2) a new substantive due process claim. Specifically, the proposed amended complaint asserts that Superintendent Brackett and Captain Weisgarber violated plaintiff's substantive due process rights by making up false disciplinary charges against him in order to subject him to punitive segregation.

To prevail on a substantive due process claim, a plaintiff must show (1) that he was deprived of a protected interest in life, liberty, or property (2) through means that are "so egregious as to shock the conscience." Harron v. Town of Franklin, 660 F.3d 531, 536 (1st Cir. 2011) (quotation omitted). The conscience-shocking element presents a high bar: the challenged conduct must be "truly outrageous, uncivilized, and intolerable." Id. (quotation omitted). "[T]he test is primarily concerned with violations of personal rights so severe, so disproportionate to the need presented, and so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience." Id. (quotation omitted).

Judged against this high bar, plaintiff has not alleged a plausible substantive due process claim. Plaintiff's factual allegations with respect to Captain Weisgarber

and Superintendent Brackett are meager. With respect to Captain Weisgarber, plaintiff alleges that she declined to permit him to call a particular witness, found him responsible for the alleged infraction, and sentenced him to twenty-five days in segregation. These allegations do not permit the reasonable inference that Captain Weisgarber "made up" disciplinary charges against plaintiff. As for Superintendent Brackett, plaintiff alleges only that he affirmed Captain Weisgarber's ruling pursuant to an administrative appeal. Again, no facts have been pled that would allow the court to reasonably infer that Superintendent Brackett engaged in any conscience-shocking behavior with respect to plaintiff's disciplinary proceeding.

For these reasons, plaintiff has not plausibly alleged a substantive due process claim in the proposed amended complaint. Count IV proceeds to the extent it alleges the procedural due process claim identified in doc. no. 11.

## V. Count V: Conditions of Confinement/Negligence

In Count V, plaintiff brings a constitutional conditions-of-confinement claim as well as a state-law negligence claim against Superintendent Brackett, USMS, the County, and "John and Jane Does 1-100," alleging that these defendants are liable for causing plaintiff's physical injuries by failing to remedy the flooding in his unit.

A. Constitutional Claim

"A pretrial detainee's claim that he has been subjected to unconstitutional conditions of confinement implicates Fourteenth Amendment liberty interests."[4] Surprenant v. Rivas, 424 F.3d 5, 18 (1st Cir. 2005). To prevail on such a claim, the plaintiff "must meet both objective and subjective criteria." Id. "First, the plaintiff must establish that, from an objective standpoint, the conditions of his confinement deny him the minimal measure of necessities required for civilized living." Id. "Second, the plaintiff must show that, from a subjective standpoint, the defendant was deliberately indifferent to inmate health or safety." Id. at 18-19.

Here, plaintiff contends that his unit's intermittent flooding violated this constitutional standard. Courts have held that allegations like plaintiff's fail to state a plausible conditions-of-confinement claim. See Dellis v. Corrs. Corp. of Am., 257 F.3d 508, 511 (6th Cir. 2001) (allegations of a flooded cell amounted to "temporary inconveniences and did not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency"); Shannon v. Vannoy, 682 F. App'x 283, 285 (5th Cir. 2017) (per curiam) (plaintiff's "allegation that a hole allowed rainwater to enter his cell and that . . . he slipped on the water and fell is plainly insufficient" to state a conditions-of-confinement claim); Callaway v. Morris, No. 4:19CV7-RP, 2019 WL 1938804, at *1, *3 (N.D. Miss. May 1, 2019) (allegation that plaintiff's "cell leaked

---

[4] The protections afforded to pretrial detainees under the Fourteenth Amendment in this context are coextensive with the protections afforded to convicted inmates under the Eighth Amendment. Surprenant v. Rivas, 424 F.3d 5, 18 (1st Cir. 2005).

when it rained" resulting in fall and torn meniscus did not state plausible conditions-of-confinement claim); Toombs v. E. Ark. Reg. Unit, No. 2:18-cv-00132-KGB-PSH, 2021 WL 190982, at *1 (E.D. Ark. Jan. 19, 2021) (allegation that plaintiff's "cell floods when there are heavy rains" failed to state conditions-of-confinement claim). The court finds that plaintiff's allegations—that periodic flooding in plaintiff's housing unit caused puddles that the plaintiff slipped and fell in on two occasions—fail to sufficiently allege the objective component of a conditions-of-confinement claim. See Cintron v. Bibeault, 148 F.4th 37, 47 (1st Cir. 2025) (explaining that plaintiff must prove that his conditions of confinement "result in the denial of the minimal civilized measure of life's necessities such that the plaintiff is incarcerated under conditions posing a substantial risk of serious harm" (quotation omitted)).

Nor do petitioner's allegations plausibly allege the subjective component of a conditions-of-confinement claim. "To demonstrate deliberate indifference, the prisoner must show that prison officials were aware of facts that gave rise to an inference that a substantial risk of serious harm existed; that they drew the inference that such a risk existed; and that they did not take reasonable steps to ameliorate the risk." Robertson v. Hazlewood, 628 F. Supp. 3d 381, 384 (D.N.H. 2022). "The requisite mental state is similar to criminal recklessness, characterized by obduracy and wantonness, not inadvertence or error in good faith." Id. (quotation omitted). At most, plaintiff alleges that Superintendent Brackett and other SCDOC officials knew of the flooding and yet failed to remedy it. These allegations do not

permit the reasonable inference that Superintendent Brackett or others knew of and consciously disregarded a substantial risk of serious harm. Nor does plaintiff allege that the defendants failed to take reasonable steps to stop the flooding. See Farmer v. Brennan, 511 U.S. 825, 844 (1994) ("[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.").

For these reasons, the proposed amended complaint does not plausibly allege a conditions-of-confinement claim.

B. Negligence

To prevail on a negligence claim under New Hampshire law, a plaintiff must prove that: (1) the defendant owed him a duty; (2) the defendant breached that duty; (3) the plaintiff suffered an injury; and (4) the defendant's breach proximately caused the plaintiff's injury. Vachon v. New Eng. Towing, Inc., 148 N.H. 429, 430 (2002). "Jailers have a duty under the common law to aid or protect inmates in their custody against unreasonable risks of physical harm." Crosby v. Dowaliby, Civ. No. 12-cv-383-SM, 2013 WL 1975360, at *4 (D.N.H. Apr. 22, 2013) (citing Murdock v. City of Keene, 137 N.H. 70, 72 (1993)), R&R approved sub nom., Crosby v. Strafford Cnty. Dep't of Corrs., Superintendent, 2013 WL 1975359, at *1 (D.N.H. May 10, 2013).

Charitably construed, the complaint alleges a negligence claim against Superintendent Brackett sufficient to survive preliminary review. Plaintiff alleges

that his unit routinely experienced flooding and that Superintendent Brackett was aware of this. The court infers from plaintiff's allegations that Superintendent Brackett failed to remedy this flooding and that, as a result, plaintiff suffered injury. These allegations permit plaintiff's negligence claim against Superintendent Bracket to proceed.[5] This conclusion is without prejudice to any arguments that might be raised in a motion filed under Rule 12 or 56.

In addition, Count V survives preliminary review to the extent it asserts a negligence claim against the County, Superintendent Brackett's employer. "Under the doctrine of respondeat superior, an employer may be held vicariously responsible for the tortious acts of its employee if the employee was acting within the scope of his or her employment when his or her tortious act injured the plaintiff." Tessier v. Rockefeller, 162 N.H. 324, 342 (2011) (quotation omitted). "Conduct falls within the scope of employment if: (1) it is of the kind the employee is employed to perform; (2) it occurs substantially within the authorized time and space limits; and (3) it is actuated, at least in part, by a purpose to serve the employer." Id. at 342-43 (brackets and quotation omitted). Charitably construed, it is reasonable to infer from the proposed amended complaint that Superintendent Brackett's alleged failure to remedy the flooding occurred within the scope of his employment by the County.

[5] Plaintiff also purports to bring his negligence claim against unnamed individual defendants. The court cannot order service of this claim upon those defendants at this time for the same reasons it cannot order service of plaintiff's retaliation claim against unnamed defendants.

Count V does not survive preliminary review to the extent it alleges a negligence claim against USMS because plaintiff's allegations do not permit the reasonable inference that any employee of USMS caused plaintiff's injury within the scope of such employee's authorized employment. See id.; see also Arthur v. Holy Rosary Credit Union, 139 N.H. 463, 465 (1995) (vicarious liability not triggered by torts of independent contractors unless the tortfeasor has been contracted to "perform work that is dangerous in itself" such as "demolition, excavation, and other clearly dangerous activities" (quotation omitted)); 28 U.S.C. § 1346(b)(1) (waiving sovereign immunity for tort claims against the United States premised upon "the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred").

## VI. Count VI: "Supplemental State Law Claims"

In Count VI, plaintiff purports to bring "supplemental state law claims—negligence, medical malpractice, and battery" "against all relevant individual defendants." Doc. no. 17 at 13. Plaintiff does not specify the allegations of fact he contends give rise to these claims, nor does he specify the defendants against whom these claims are brought. As such, Count VI is inadequately pled. See Fed. Rs. Civ. P. 8(a), 10(a).

In the alternative, to the extent plaintiff intended to assert claims based upon his allegations that he received incorrect medication on two occasions and was placed in a wheelchair after his collapse in March 2023, plaintiff's allegations do not overcome the immunity from liability provided to governmental units and their employees by New Hampshire state law. See RSA 507-B:2, -B:4, IV, -B:5; see also Maryea v. Baggs, Civ. No. 13-cv-318-LM, 2016 WL 1060226, at *5-6 (D.N.H. Mar. 15, 2016) (explaining that this statutory scheme bars claims for bodily or personal injury against governmental units and their employees acting with a reasonable belief in the legality of their actions and within the scope of their employment unless the plaintiff's claims arise from the operation of physical premises).

## CONCLUSION

Plaintiff's motion for leave to amend (doc. no. 17) is granted in part and denied in part. It is granted to the extent that Count III alleges a retaliation claim against one or more unnamed defendants that is sufficient to survive preliminary review. It is further granted to the extent that Count IV sufficiently alleges the procedural due process claim that the court allowed past preliminary review in doc. no. 11. It is further granted to the extent that the negligence claim against Superintendent Brackett and the County in Count V proceeds beyond preliminary review. It is denied in all other respects. This ruling is without prejudice to any arguments that defendants might seek to raise, including in a pleading submitted under Rules 12 or 56. The operative complaint is now Exhibit A to doc. no. 17. The clerk's office is directed to substitute SCDOC Captain Gwen Weisgarber for the

Disciplinary Officer Jane Doe defendant identified in Count IV of doc. no. 17. See doc. nos. 14 & 15.

At this time, the following claims are live in the case:

- Count III: retaliation claim against one or more unnamed defendants (loss of job and discipline for filing grievances).
- Count IV: procedural due process claim against Superintendent Brackett and Captain Weisgarber (for not permitting eyewitness to testify).
- Count V: negligence claim against Superintendent Brackett and the County (for injuries suffered because jail allowed flooding).

SO ORDERED.

Landya McCafferty
United States District Judge

November 5, 2026

cc: Tomas C. Johnson, pro se
Counsel of Record